## C. C. Steere, Appellant, v. D. K. Oakley.

*Payment—Evidence—Account stated—Province of court and jury.*

An illiterate mortgagor made payments during a long series of years on account of the principal and interest of the mortgage, partly in cash and notes, and partly in produce. The mortgagee finally presented an account insisting upon immediate payment of the balance. The mortgagor

alleged that there were mistakes, and large charges of usurious interest in the account. The mortgagee would not wait to have the calculation examined, but insisted upon immediate payment. The mortgagor finally paid the whole amount claimed, upon the promise of the mortgagee that, if the account was not right, he would make it right. The mortgagor subsequently brought suit against the mortgagee to recover back the alleged overpayments. The evidence on behalf of the mortgagor tended to show either that the mortgagee had made a very material mistake in his computation of interest or that he intentionally made a false statement. *Held,* that a judgment and verdict for the mortgagor should be sustained.

Argued Feb. 21, 1898. Appeal, No. 327, Jan. T., 1897, by plaintiff, from judgment of Superior Court, Jan. T., 1897, No. 32, reversing judgment of C. P. Lackawanna Co., June T., 1889, No. 531, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Appeal from the Superior Court.

Assumpsit to recover an alleged overpayment on account of the principal and interest of a mortgage. Before EDWARDS, J.

The facts appear by the opinion of the Superior Court, reported in 5 Pa. Superior Ct. 46, and the opinion of the Supreme Court.

*Errors assigned* among others were portions of the opinion of the Superior Court, quoting them, as follows : (4) There can be no reasonable ground for doubting Steere's knowledge that he was paying more than the legal rate of interest. While declaring that he could not " figure down to the cents," in computing interest, he admits his knowledge that $60.00 was the legal interest on $1,000 ; that the interest on $900 would be not quite $60.00 ; and that Oakley, in his computation, " was figuring it too big." Still more conclusive was the fact, testified to by him, that the first note, for $56.70, was for a year's interest at six per cent. As bearing on the question of usury, it is a significant circumstance that this note was drawn to Nichols, the assignor of the mortgage, as payee ; and from the uncontradicted testimony of Oakley this was done with a view to evading the usury law. Steere thus knew, at the outset, that $56.70 was the legal interest on $945.27 ; and whenever he paid more than this as a year's interest he knew that he was paying more than the legal rate. This note remained in his

possession from the time it was taken up by him until the settlement, and, were it necessary, he could always refer to it, as showing the amount of a year's legal interest on the debt; (5) His assertion that he was not knowingly paying more than six per cent is inconsistent, also, with the contention that his payments were involuntary, and were extorted by the duress of threatened legal proceedings for the collection of the principal. There is no element of duress in the case and the payments were not in contemplation of law involuntary. There can be no duress, in law, except through an unlawful act. There is no duress involved in a threat to enforce a legal demand in a legal manner; and this is the utmost that it is alleged on the part of the plaintiff in his testimony that Oakley threatened to collect the debt unless it was paid. The extortion of usurious interest, by such a threat, is to be redressed by an action for its recovery within six months, under the act of 1858; (6) In the present case, when the settlement was made, the plaintiff had in his possession all notes, receipts and other memoranda of his payments to the defendant. In the absence of fraud or mistake it must be presumed that all of these which the parties recognized as having a place in the settlement were duly taken into account. There is no evidence and no allegation that anything was omitted to the prejudice of the plaintiff that should have been included in the settlement. With the means at hand of determining with accuracy the credits which should be applied on the mortgage, it must be presumed that they were so determined and applied and that the balance which was accepted as correct was in fact the amount remaining due; (7) The settlement thus reached can be impeached only for fraud or mistake. There is, in the declaration no allegation of either fraud or mistake; indeed, outside of the common counts, which are indefinite, and under the procedure act of 1887 are not to be considered, there is no allegation of any act, omission or circumstance of any kind on which a recovery is sought. The record does not disclose the issue between the parties, and the evidence leaves it obscure. It is sufficient, however, to say, from a careful examination of the evidence, that there is nothing in it that can warrant a jury in finding either fraud or mistake in the settlement. It was wholly insufficient to justify the submission of the case to the jury, and the defendant's first point should have been affirmed.

Also (8) in reversing the judgment of the common pleas.

*A. A. Vosburg*, of *Vosburg & Dawson*, for appellant.—Payments in excess of six per cent, although paid as interest, become payments on account of the principal as a matter of law: Campbell v. Sloan, 62 Pa. 486.

Money obtained by deceit or unfair practices can be recovered back: Mathers v. Pearson, 13 S. & R. 258; Taylor v. Commissioners, 3 P. & W. 112.

The fact that plaintiff did not avail himself of the "means of knowledge," viz: the receipts and notes which were locked up in his desk, does not prevent him showing that he made a mistake, and from recovering back the overpayment so made by mistake. Kelly v. Solari, 9 M. & W. 54; Meredith v. Haines, 14 W. N. C. 364; Kerr on Fraud and Mistake, 415.

Duress is not the only thing that will render a payment involuntary. Duress is one, but there are others; for instance, money is not paid voluntarily, when it is paid under a mistake of fact: McKibben v. Doyle, 173 Pa. 579.

A common mistake of fact for which money may usually be recovered back arises in computing interest: Worley v. Moore, 97 Ind. 15; Boon v. Miller, 16 Mo. 457; Hathaway v. Hagan, 59 Vt. 75; Taylor v. Commissioners, 3 P. & W. 112; Brooks v. Presbyterian Church, 128 Pa. 408; Coon v. Canal Co., 14 Luz. Leg. 461; Keener on Quasi Contracts, 30; Stuart v. Sears, 119 Mass. 143; Wheadon v. Olds, 20 Wend. 174; Rheel v. Hicks, 25 N. Y. 289.

Fraud in fact is a question exclusively for the jury: Loucheim v. Henszey, 77 Pa. 305; Graham v. Smith, 25 Pa. 323; Collins v. Barnes, 83 Pa. 15; Lamb v. Irwin, 69 Pa. 436; Hobart v. McCoy, 3 Pa. 419.

*H. M. Hannah* and *S. B. Price*, for appellee.—In order to warrant an attempt to correct a mistake, the party alleging it must establish the fact by clear, precise and indubitable proof: Stine v. Sherk, 1 W. & S. 195; Breneiser v. Davis, 134 Pa. 1.

One who voluntarily pays money, with a full knowledge of the facts, or the means of knowledge, cannot recover it back, though it be in excess of the amount due: Real Est. Savings Inst. v. Linder, 74 Pa. 373; Union Ins. Co. v. Allegheny, 101

Pa. 255; Peebles v. City of Pittsburgh, 101 Pa. 308; Gould v. McFall, 118 Pa. 457; Harvey v. Girard Nat. Bank, 119 Pa. 222; De La Cuesta v. Ins. Co., 136 Pa. 78; Krumbhaar v. Yewdall, 153 Pa. 479; Adams, Equity, p. 189.

When usurious interest has been included in a judgment, and the judgment has been paid and satisfied, the excess cannot be recovered back by suit. Usurious interest included in a judgment confessed cannot be recovered back after the judgment has been paid by the defendant in full: Hopkins v. West, 83 Pa. 109; Rutherford v. Boyer, 84 Pa. 347; Montague v. McDowell, 99 Pa. 269.

OPINION BY MR. JUSTICE DEAN, July 21, 1898:

In this case, the common pleas, considering the issue mainly one of fact, on contradictory evidence, twice submitted it to the jury, who at both trials found for plaintiff. On the second verdict judgment was entered and an appeal taken therefrom to the Superior Court; that court, considering there was not sufficient evidence to warrant the verdict, reversed the judgment without a venire.

The plaintiff was an illiterate farmer; he borrowed, on April 16, 1872, from Nichols, executor of Kingsley, $945.27, and to secure the loan gave bond accompanied by mortgage on his real estate. In about nine months afterwards, Nichols pressed for payment; Oakley, defendant, on application of Steere, paid the loan, and took an assignment of the bond and mortgage. The interest up to the date of transfer was paid by Steere, so that the exact amount paid by Oakley at that date was the amount of the original loan, $945.27. The exact interest for one year at six per cent and $2.50 fee for recording transfer was then paid by Steere to Oakley in advance by a note for the amount, which was lifted by Steere. From 1873 to 1887, Steere made many payments, sometimes cash and at others farm products, or by acceptance of orders given on him to others by Oakley. The payments in cash were all made to Oakley at his home in Harford; Steere trusting to Oakley to compute the interest, paying whatever he had to pay, but being frequently short gave his note for balance, and then lifted the notes. The receipts for cash, produce and notes in this period accumulated to a large number, and the account and calculations were quite long. In

October, 1887, Oakley demanded payment. According to his computation the balance due him then was $1,243.18. Steere was dissatisfied, alleging that he had paid the interest at least on the loan, but Oakley threatening to immediately collect the mortgage, Steere got Henry Brewster to take an assignment of the bond and mortgage, and pay to Oakley the $1,243.18, amount claimed by Oakley. Before the money was paid, Steere asked for time to have the computation of Oakley examined, but Oakley insisted on having his money immediately, and expressly promised Steere that if the calculation was not right he would make it right. Afterwards, on a revision of the calculation by an accountant, plaintiff alleges that he discovered overpayments, which Oakley refused to refund, thereupon he brought suit. At the trial he offered evidence tending to show overpayment of several hundred dollars. The plaintiff testified that the rate of interest was six per cent; that Oakley frequently told him that was the rate he was charging. Steere's wife and son also testified that Oakley told them six per cent was the rate of interest on the loan. The evidence showed that, often in the computation, Oakley had charged a much higher rate. At the trial in the common pleas the evidence was very conflicting, that of the plaintiff tending to show a large overpayment, of which he did not have knowledge at the time of the last payment; it resulted mainly from alleged omitted credits and alleged usurious interest. The evidence of defendant tended to show that the usurious interest had been assented to by Steere at the time it was charged, and that all the credits that Steere was entitled to were given. The defendant also strenuously insisted that the last calculation made at the time Brewster took the transfer was conclusive upon plaintiff, and could not be reopened. As before noted, the learned judge of the common pleas submitted the conflicting evidence to the jury, instructing them that if the alleged charge of usurious interest was known to Steere, and was assented to or not objected to at the time it was paid, the plaintiff could recover back no part of it; further, that if there was a mutual settlement between them before the payment, made by transfer to Brewster, the plaintiff could not recover. But, on the other hand, if the alleged settlement was not assented to by both, and Steere was induced to pay on the promise to him by Oakley that if not right, he would make it right,

then any mistakes in credits would warrant a verdict for plaintiff in the amount of the mistakes and overcharges.

On the appeal to the Superior Court the principal assignment of error was to the refusal of the court to unqualifiedly instruct the jury as requested in defendant's fifth point, "That if the jury believed Steere had full knowledge of all the payments made by him at the time of the settlement, or had the means of knowledge in his possession, the verdict must be for defendant." The learned Superior Court, after a most careful and elaborate review of the testimony and the credibility of the witnesses, decides that it is demonstrable that Steere must have known at the time he made the payments that usurious interest was being exacted by Oakley, and therefore he voluntarily paid it, and cannot recover it back. And further, that necessarily, he had full knowledge or means of knowledge of the facts when the alleged settlement was made.

The reasons for this conclusion are quite forcible, and if they had been addressed to the jury they might have induced them to render a different verdict, but there was evidence to sustain an opposite theory; Steere was an ignorant, illiterate man; he trusted to Oakley to keep the accounts of the many payments covering the long period of the loan; there was no full statement and computation made and put in Steere's possession, until the final demand for payment; Steere testifies that the rate of interest was six per cent, and he knew of no other, nor of any demand for a higher one; that he made the payments on the mortgage without specifying interest; his wife and son both testify that they heard Oakley declare the rate of interest was six per cent. Now, assume that some of the receipts and the amounts paid indicate that they were for usurious interest, yet these papers are not conclusive; they are the subject of explanation. They are not sealed deeds, or such formal instruments as cannot be varied or contradicted. Steere testifies that he could not compute interest, and did not notice that some of the receipts read for interest, which a computation now shows must have been at an usurious rate. The evidence being of this character, it was for the jury to find the truth.

As to Steere having knowledge or the means of knowledge of the mistakes at the last settlement, he testifies positively that he had not such knowledge, and though he had all the receipts

in his possession, Oakley would not wait to have the calculation examined and compared with the receipts and payments; and that he paid, only because Oakley expressly stipulated that if the account was not right he would make it right. If this be true, and the jury certainly believed it to be true, then Steere could examine and compare the statement with the receipts and payments within a reasonable time afterwards; could revise the computation of interest, and make any well founded objection to the accuracy of the statement. It was in no sense an account stated and balance struck and paid without objection; it was an account with balance stated, with the right to make objection in the future, a right, too, expressly accorded by the party making the statement. In this view of the facts, it was wholly immaterial that Steere had the receipts and other evidence of payment in his possession; he could not verify the statement without a prolonged examination, and the time necessary to this Oakley would not grant.

One of two things seems to our minds clear, if plaintiff's evidence be believed, either Oakley made a very material mistake in his computation of interest, or he intentionally made a false statement; in either case, plaintiff could recover back the overpayment if the jury found for him on the evidence, and we are clearly of opinion that it was for the jury to pass on the evidence as it was submitted to them by the court of common pleas. The fourth, fifth, sixth and seventh assignments of error to the judgment of the Superior Court are sustained, the judgment of said court is reversed, and the judgment of the common pleas is affirmed, costs to be paid by D. K. Oakley, appellee, in this Court.